UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,                                          CASE NO.

    Plaintiff,

vs.

ADRIANA DEGREAS USA, INC,
A Florida for Profit Corporation

    Defendant,
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant, ADRIANA DEGREAS USA, INC., a foreign corporation d/b/a ADRIANA DEGREAS (hereinafter referred to as "ADRIANA DEGREAS"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, ADRIANA DEGREAS is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7) Defendant, ADRIANA DEGREAS is a company that sells women's clothing, bags, accessories and swimsuits. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase foilage turban and other items.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16) Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment. As such, Plaintiff is a member of a protected class

under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons. The software that she uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates retail locations. The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to, among other things, view the products available at defendant's locations, purchase clothing, bags, shoes and accessories through defendant's website, subscribe to Defendant's newsletter, subscribe to obtain 10% discount, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, advertising campaigns, and fashion shows.

20) Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing dresses through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's stores.

23) The website also services Defendant's physical stores by providing information on its brand, sales campaigns, fashion shows, and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to view the products available at defendant's locations, purchase clothing, bags, accessories, through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, advertising campaigns, and fashion shows, the website is an extension of, and gateway to, Defendant's physical stores. By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, advertising campaigns, and fashion shows, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal

enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26) At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://shop.adrianadegreas.com/ Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28) The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30) During the months of April and May, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate herself as to the merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing clothing, bags, accessories, through defendant's website, subscribing to Defendant's newsletter, creating an account and registering to track orders, creating a wish list, and learning the story behind Defendant's brand, advertising campaigns, and fashion shows.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37)     Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

**Violations that prevent users from completing desired action**

- **Violation**: Labels or instructions are not provided when content requires user input.

    Note/Proof: On product pages, instructions for selecting quantity are not fully described in an audible format to the user. A number is read out after the Size Chart button, but no mention of that number corresponding to quantity is made (video).

    Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

    Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

- **Violation**: Labels or instructions are not provided when content requires user input.

    Note/Proof: On search result pages, description of content in an audible format stops working once the user navigates away from the GET 10% OFF link (video).

    Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

    Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

- **Violation**: When an input error is automatically detected, the item that is in error is not described to the user in text.

    Note/Proof: Invalid inputs when creating an account for the purpose of checking out are not described in an audible format to the user (video). User can't create an account as a result of the error.

    Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.1 Error Identification (Level A).*

    Nature of the Violation: required by WCAG 2.1's *Standard 3.3.1 Error*

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://shop.adrianadegreas.com/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

**Violations that prevent users from completing desired action**

- **Violation**: Labels or instructions are not provided when content requires user input.

    Note/Proof: On product pages, instructions for selecting quantity are not fully described in an audible format to the user. A number is read out after the Size Chart button, but no mention of that number corresponding to quantity is made (video).

    Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

    Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

- **Violation**: Labels or instructions are not provided when content requires user input.

>> Note/Proof: On search result pages, description of content in an audible format stops working once the user navigates away from the GET 10% OFF link (video).
>>
>> Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*
>>
>> Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

- **Violation**: When an input error is automatically detected, the item that is in error is not described to the user in text.

>> Note/Proof: Invalid inputs when creating an account for the purpose of checking out are not described in an audible format to the user (video). User can't create an account as a result of the error.
>>
>> Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.1 Error Identification (Level A).*
>>
>> Nature of the Violation: required by WCAG 2.1's *Standard 3.3.1 Error*

51) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

52) As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A. A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any

applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.  An award to Plaintiff of her reasonable attorney's fees costs and expenses pursuant to 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.


[1]

## **COUNT II – TRESPASS**

53)  Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)  Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)  Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

56) Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

57) Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

58) On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

Privacy policy

**SECTION 1 - WHAT DO WE DO WITH YOUR INFORMATION?**

When you purchase something from our store, as part of the buying and selling process, we collect the personal information you give us such as your name, address and e-mail address.

When you browse our store, we also automatically receive your computer's internet protocol (IP) address in order to provide us with information that helps us learn about your browser and operating system.

When you create an account in our store, you will be able to opt-in or out to our newsletter list. Once you opt-in, you are giving us the permission to send you e-mails about our store, new products, sale season and so on. You can opt-out from our newsletter list at any moment by clicking on the unsubscribe link which goes in every e-mail we send.

**SECTION 2 - CONSENT**

How do you get my consent?

When you provide us with personal information to complete a transaction, verify your credit card, place an order, arrange for a delivery or return a purchase, we imply that you consent to our collecting it and using it for that specific reason only.

If we ask for your personal information for a secondary reason, like marketing, we will either ask you directly for your expressed consent, or provide you with an opportunity to say no.

How do I withdraw my consent?

If after you opt-in, you change your mind, you may withdraw your consent for us to contact you, for the continued collection, use or disclosure of your information, at any time, by contacting us at [customer@adrianadegreas.com](mailto:customer@adrianadegreas.com).

**SECTION 3 - DISCLOSURE**

We may disclose your personal information if we are required by law to do so or if you violate our Terms of Use and Service.

**SECTION 4 – DATA STORAGE AND PAYMENT**

Our store is hosted on Shopify Inc. They provide us with the online e-commerce platform that allows us to sell our products and services to you.

Your data is stored through Shopify's data storage, databases and the general Shopify application. They store your data on a secure server located in the United States of America, protected by a firewall.

If you choose a direct payment gateway to complete your purchase, Shopify stores your credit card data only as long as necessary to complete your transaction. The data collected is encrypted through the Payment Card Industry Data Security Standard (PCI-DSS). After the transaction is complete, your purchase transaction information is deleted.

All direct payment gateways adhere to the standards set by PCI-DSS as managed by the PCI Security Standards Council, which is a joint effort of brands like Visa, MasterCard, American Express and Discover.

PCI-DSS requirements help ensure the secure handling of credit card information by our store and its service providers.

For more insight, you may also want to read our e-commerce platform provider's Terms of Service or Privacy Statement.

### SECTION 5 - THIRD-PARTY SERVICES

In general, the third-party providers used by us will only collect, use and disclose your information to the extent necessary to allow them to perform the services they provide to us.

However, certain third-party service providers, such as payment gateways and other payment transaction processors, have their own privacy policies in respect to the information we are required to provide to them for your purchase-related transactions.

For these providers, we recommend that you read their privacy policies so you can understand the manner in which your personal information will be handled by these providers.

In particular, remember that certain providers may be located in or have facilities that are located a different jurisdiction than either you or us. So if you elect to proceed with a transaction that involves the services of a third-party service provider, then your information may become subject to the laws of the jurisdiction(s) in which that service provider or its facilities are located.

As an example, if you are located in Canada and your transaction is processed by a payment gateway located in the United States, then your personal information used in completing that transaction may be subject to disclosure under United States legislation, including the Patriot Act.

Once you leave our store's website or are redirected to a third-party website or application, you are no longer governed by this Privacy Policy or our website's Terms of Use and Service .

When you click on links on our store, they may direct you away from our site. We are not responsible for the privacy practices of other sites and encourage you to read their privacy statements.

### SECTION 6 - SECURITY

To protect your personal information, we take reasonable precautions and follow industry best practices to make sure it is not inappropriately lost, misused, accessed, disclosed, altered or destroyed.

If you provide us with your credit card information, the information is encrypted using secure socket layer technology (SSL) and stored with an AES-256 encryption.  Although no method of transmission over the Internet or electronic storage is 100% secure, we follow

all PCI-DSS requirements and implement additional generally accepted industry standards.

### SECTION 7 - COOKIES

When you visit our website, we may send a small file to your computer (a "cookie") which is stored in there so that we can recognize your computer as a unique machine the next time you visit our website. That enables us to, among other things, to tailor the Services to your needs.

You are totally free to decline any cookies simply by setting up your browser (if it permits) to not storage cookies. However, please note that by declining cookies, certain functionalities of our website services will not be available to you. Additionally, some of our third-party service providers working on our behalf may also utilize their own cookies. We encourage you to read also their privacy statements.

### SECTION 8 - AGE OF CONSENT

By using this site, you represent that you are at least the age of majority in your state or province of residence, or that you are the age of majority in your state or province of residence and you have given us your consent to allow any of your minor dependents to use this site.

### SECTION 9 - CHANGES TO THIS PRIVACY POLICY

We reserve the right to modify this privacy policy at any time, so please review it frequently. Changes and clarifications will take effect immediately upon their posting on the website. If we make material changes to this policy, we will notify you here that it has been updated, so that you are aware of what information we collect, how we use it, and under what circumstances, if any, we use and/or disclose it.

If our store is acquired or merged with another company, your information may be transferred to the new owners so that we may continue to sell products to you.

### INTERNATIONAL DELIVERY, CURRENCY, TAXES & DUTTY

All product prices indicated, and payments made on the US Online Store site are in USD currency.

If a Delivery Duty Unpaid (DDU) destination is selected at checkout taxes and duties will be payable upon your order arriving in your country. This will be noted in the checkout process. For these countries, we are unable to estimate the amount of taxes and duties your

order will incur, as these charges are imposed directly by your local customs. Payment of these is necessary to release your order from customs. This payment is the responsibility of the customer. For more information, contact your local customs office.

59) Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer. Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## Request for Jury Trial

61) Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101

Miami Lakes, FL  33014
Telephone:  305-824-9800
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net
By:_____ /s/_____
RICHARD JOHN ADAMS, ESQ
FL BAR NO.: 770434